UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re								Chapter 11

    4921 12th Avenue, LLC				Case no. 18-47256

								Debtor.
------------------------------------------------------------x

# DECLARATION IN SUPPORT OF PLAN CONFIRMATION[1]

Robert Liner, as managing member of Galster Funding LLC (the "Proponent" or "Mortgagee"), the Proponent of the Amended Plan of Reorganization (the "Plan") in the case of 4921 12th Avenue, LLC ("Debtor"), states under penalty of perjury as follows:

1. On December 20, 2018, the Debtor filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. "101 et seq. (the "Bankruptcy Code").

2. The Debtor owns the real property at 4917 12th Avenue, Brooklyn, New York 11219 (the "Property") pictured below:

---

[1] Capitalized terms not defined herein shall have the same meaning as defined in the Plan.



3. The value of the Property, as stated by the Debtor in its Chapter 11 schedules is $10,000,000.

4. Galster Funding LLC (the "Galster Mortgagee") holds a judgment of foreclosure and sale entered on August 20, 2018 in an action entitled *Galster Funding LLC v. 4921 12th Avenue LLC; et al.* in the Supreme Court of the State of New York, County of Kings, Index No.: 500818/2017 (the "Galster Judgment"). The total amount due under the Galster Judgment as of the December 20, 2018 filing date is $9,480,175:

| | |
|---|---:|
| Judgment Amount: | $8,929,916 |
| Interest from 5/31/18 to 08/20/18 @24% per judgment: | 350,973 |
| Interest from 8/21/18 to 12/20/18 @9% per judgment: | 193,931 |
| Costs and Disbursements with interest per judgment: | 1,855 |
| Attorneys' fees per judgment: | 3,500 |
| TOTAL: | $9,480,175 |

5. The only other scheduled creditor is Beis Chasidi Gorlitz (the "BCG Mortgagee"). BCG filed a $13,500,000 mortgage lien claim.

6. Based on the Galster Judgment and the BCG Mortgage claim, secured claims total $22,980,175.

7. Absent any creditors except the two mortgagees, it appears that the Debtor filed this Chapter 11 on the eve of the foreclosure sale simply to delay the inevitable sale.

8. The case has a long and unusual backstory.

9. On or about August 30, 2016, the Galster Mortgagee loaned the Debtor $6,500,000, secured by a mortgage on the Property, which Property comprises two condominium units called C1 and R1.

10. At that time, there were two mortgages of record against the Property held by the BCG Mortgagee, one for $1,200,000 and the other for $1,300,000 (the "BCG Mortgages").

11. At closing the Galster Loan, the Debtor presented two (2) satisfactions of mortgages (the "Satisfactions") purportedly evidencing the satisfaction of the BCG Mortgages.

12. Believing that its mortgage would have first priority, the Galster Mortgagee closed and disbursed the loan proceeds.

13.     Two months later on November 3, 2016, the BCG Mortgagee commenced a Kings Supreme Court action under index number 519469/2016. BCG produced an affidavit from the notary public on the Satisfactions attesting that the Satisfactions were forged and/or fraudulent. BCG alleged that the amount remaining due on the BCG Mortgages exceeded $5 million as of January 2016. BCG sought a declaration that the Satisfactions were void, that the BCG Mortgages remained valid liens, and that the Galster Mortgage was void. The same day, the Supreme Court enjoined the Debtor and Yehuda Salamon, its principal, from dissipating assets.

14.     When the Galster Mortgagee discovered the BCG action, it filed a Supreme Court case to enjoin disbursement of the amounts remaining of its $6,500,000 loan.

15.     The Debtor did not oppose either of the injunction applications. Instead, the Debtor essentially admitted that the Satisfactions were bogus and offered to vacate them.

16.     The requested injunctions were entered, the Debtor stopped paying the Galster mortgage, the Galster Mortgagee accelerated its loan, and the Galster Mortgagee commenced its foreclosure action.

17.     In the BCG case, BCG filed an affirmation alleging a pattern of Debtor misconduct including attempts to defraud BCG, the IRS, the Charities Bureau of the New York State Attorney General's office and the New York State Department of Taxation and Finance.

18.     The Debtor then sought to stay the Galster foreclosure arguing that the fraud allegations in the BCG case must be determined first. The ploy failed. The Supreme Court denied the Debtor's motion and appointed Gregory Laspina receiver by order signed on July 11, 2017. Mr. Laspina, however, never took possession.

19. Later, the Supreme Court, by decision and order dated March 7, 2019, extinguished the bogus satisfactions as demanded by BCG.

20. Galster had title insurance. Old Republic, Galster's title insurance carrier, honored its obligation to represent Galster and Butler Fitzgerald was retained for that purpose. Old Republic also acquired the BCG obligation and agreed to subordinate the BCG Mortgages to the Galster mortgage.

21. The Foreclosure Judgment was entered August 20, 2018, and the sale scheduled for December 20, 2018.

22. Meanwhile, since 2005, Yehuda Salamon, the Debtor's beneficial owner, was also beneficial owner of Yidel's grocery store, which occupies the first floor Property and, upon information and belief, Mr. Salamon has also permitted tenants to occupy the upstairs residential units. The mortgages have been unpaid for years, but the Debtor had no money in its account upon filing this case. This raises questions about whether rent has been collected and who has been collecting rent. At the first meeting of creditors the Debtor could not answer a single question about the tenancies, despite repeated attempts by the United State Trustee and Galster's counsel.

23. Unfortunately, the Debtor's principal has done nothing since filing this case to indicate that he shares the Mortgagee's sense of urgency regarding the eroding equity in the Property as judgment interest accrues every day.

24. The Plan provides for sale of the Property. The sale proceeds will be used (a) to pay pre-petition New York City real estate tax and other liens, if any, (b) administrative claims in an unliquidated amount, subject to Bankruptcy Court approval of Debtor's

professionals' fee applications, (c) Plan administration fees estimated to be approximately $25,000, (d) brokerage fees of 3% of the Purchase Price, (e) priority claims if any, and (f) the remainder to Creditors and Interest Holders in their order of priority.

25. To ensure the Property is sold after reasonable exposure to the marketplace for the highest and best price, the Plan provides for professional marketing for at least 30 days, followed by an auction among qualified bidders.

26. To effectuate the sale, the Confirmation Order, shall provide that on the Confirmation Date, the Plan Administrator shall be vested with all requisite rights and powers to exercise possession and control, including right of determination, over ( a) all of the Debtor's rights, title and interests in and to the Property, including all improvements, appurtenances and personal property associated therewith, and (b) the Debtor's Cash on hand for administration by the Plan Administrator. On the Confirmation Date, the Plan Administrator shall take control of the Property and be responsible for the management and operation thereof until the Plan Administrator consummates a sale or other disposition of the Property under the terms of the Plan.

27. In addition, on the Confirmation Date all of the Debtor's right, title and interests in and to any and all Causes of Action shall be deemed transferred to the Plan Administrator,

28. Until the Property is sold under the Plan, the Plan Administrator shall provide periodic sale progress reports to parties in interest upon request.

29. The Plan Administrator shall implement the Plan's Bidding and Auction Procedures within 14 days of the Confirmation Date, market for at least 30 days, and conduct an

auction sale and schedule a Bankruptcy Court hearing thereon within 75 days of the Confirmation Date, subject to reasonable extension of time in the Plan Administrator's discretion not to exceed 60 days, unless under Order of the Bankruptcy Court. The sale shall be conducted by Rosewood Realty Group. Absent a higher before the auction, the Proponent shall start the bidding with a $3,250,000 opening bid.

30. Any fees, costs, or expenses incurred by the Plan Administrator in connection with the Plan and the marketing and sale of the Property, including any fees and/or commissions earned by the Broker, shall be paid from the net proceeds realized upon a sale of the Hotel Property.

31. In addition, on the Confirmation Date, any right, claim or cause of action, belonging to the Debtor or its estate against any Person or Entity, including, without limitation, any claim to avoid a transfer under, inter alia, Sections 544, 547, 548, 549 or 553(b) of the Bankruptcy Code, shall be transferred, conveyed and assigned by the Debtor to the Plan Administrator for the benefit of the holders of Allowed Claims and Equity Interests in the order of their respective statutory priorities as provided for in the Plan.

32. The distribution under the Plan will be greater than in a Chapter 7 case because a sale under the Plan avoids a layer of Chapter 7 Administrative Claims as well as stamp taxes. There would be no distribution in a Chapter 7 case given the shortfall between the estimated $10,000,000 purchase price and the $22,980,175 of Secured Claims.

33. The Plan complies with the applicable provisions of the Bankruptcy Code, pursuant to section 1129(a)(1), such as compliance with the rules for classification of claims under section 1122 of the Code and the plan requirements under section 1123 of the Code.

34. The Proponent has complied with the applicable provisions of the Bankruptcy Code pursuant to section 1129(a)(2) such as compliance with the disclosure and solicitation requirements of section 1125 and 1126 of the Code.

35. The Plan has been proposed in good faith and not by any means forbidden by law pursuant to section 1129(a)(3) inasmuch as the plan is consistent with the general intent of the Code to permit the liquidation of a debtor's assets to maximize the return to creditors.

36. Any payment made or promised by the Debtor or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable, pursuant to section 1129(a)(4). This section is inapplicable herein.

37. Post-confirmation management of the Debtor will remain unchanged. That is consistent with section 1129(a)(5) because management of the Debtor's assets will be transferred to the Plan Administrator on the Confirmation Date, and existing creditors will no longer be affected by the Debtor's remaining management post-confirmation.

38. The Plan does not propose a rate change for which governmental regulatory commission approval is required, pursuant to section 1129(a)(6).

39. The Class 2 Proponent, the Class 3 Claimant and Class 5 general unsecured creditors are impaired. Each of those classes has voted to accept the Plan. Accordingly, the requirement under section 1129(a)(7) of the Bankruptcy Code is deemed

satisfied, i.e., with respect to each class of impaired Claims, either each holder of a Claim or interest of such class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or interest property of a value, as of the Effective Date of the Plan, in an amount that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under Chapter 7 of the Bankruptcy Code.

40. The Class 6 Interest Holder appears to have voted to reject the Plan, but the Plan satisfies section 1129(a)(7) because the Class 6 Interest Holder will be paid no less than it would be entitled to under Chapter 7 of the Bankruptcy Code.

41. Based upon the preceding paragraph, the requirement of section 1129(a)(8) is also deemed satisfied with respect to creditor classes, i.e., that each class has accepted the Plan, or is not impaired under the Plan.

42. The Class 6 Interest Holder appears to have voted to reject the Plan. The Proponent submits that the Bankruptcy Court may still confirm the Plan under section 1129(b)(2)(C) because, as to Interest Holders, the Plan "does not discriminate unfairly" and is "fair and equitable."

43. Class 6 is entitled to a distribution from the sale proceeds consistent with its order of priority under the Bankruptcy Code. The Plan, therefore, is fair and equitable because the Plan provides that each Interest Holder will receive or retain property of a value, as of the effective date of the plan, equal to the greatest of: (1) the allowed amount of any fixed liquidation preference to which the interest holder is entitled, (2) any fixed redemption price to which the interest holder is entitled or (3) the value of such interest. In addition, the plan is fair

9

and equitable with respect to Class 6 because no holder of any interest that is junior to Class 6 will receive or retain property under the plan.

44. Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that priority and administration claims will be paid in full on the Effective Date, or as soon thereafter as the Allowed Amounts of such Claims are determined, thereby satisfying section 1129(a)(9) of the Code.

45. Classes 2, 3 and 5 are impaired and voted to accept the Plan. Thus, the Debtor has satisfied the requirement of section 1129(a)(10) of the Code, that at least one class of impaired Claims has accepted the Plan.

46. Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor or any successors to the Debtor under the Plan pursuant to section 1129(a)(11), since the Debtor intends to liquidate the sale proceeds under the Plan.

47. All fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan pursuant to section 1129(a)(12).

48. The Debtor does not have retirement benefits obligations, and, therefore, section 1129(a)(13) relating to retirement benefits does not apply to this case.

49. Based upon the foregoing, the Debtor respectfully requests that the Court confirm the Plan.

Dated: New York, New York
July 15, 2019

s/Robert Liner

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                        Chapter 11

    4921 12th Avenue, LLC                  Case no.  18-47256

          Debtor.
------------------------------------------------------------x

# ORDER CONFIRMING MORTGAGEE'S PLAN OF REORGANIZATION[1]

      Galster Funding LLC (the "Proponent" or the "Mortgagee") having proposed its Plan of Reorganization (the "Plan") dated May 1, 2019 for debtor 4921 12th Avenue, LLC (the "Debtor"); and the Disclosure Statement approved in connection with the Plan having been transmitted to creditors and equity security holders, and upon the Declaration in Support of Plan Confirmation of Robert Liner executed on July 15, 2019, and upon the hearing held before this Court on July 17, 2019 (the "Confirmation Hearing"), and upon the entire record of this case, and the Court having found: (a) that the requirements for confirmation of the Plan set forth in 11 U.S.C. 1129(a) have been satisfied at the Confirmation Hearing, and (b) that cause exists for the Court to order that the stay under Bankruptcy Rule 3020(e) shall not apply to this Order; it is

      ORDERED, that pursuant to sections 1129 and 1141 of the Bankruptcy Code, the Plan be, and it hereby is, confirmed; and it is further

      ORDERED, that in furtherance of the Plan, the Proponent and the Plan Administrator are authorized and directed to take any and all actions contemplated to be taken by them under the Plan; and it is further

---

[1] All terms not defined herein shall have the same meaning as in the Plan.

ORDERED, that in accordance with Section 1141(a) of the Bankruptcy Code, the provisions of the Plan and this Confirmation Order are binding on the Proponent, the Debtor, each Creditor, and every other party-in-interest in this case and each of their respective successors and assigns (whether or not such Creditors or parties-in-interest voted to accept the Plan, whether or not they are impaired under the Plan, and whether or not any such Holder has filed, or is deemed to have filed, a proof of Claim or proof of Interest), and any other Person giving, acquiring, or receiving property under the Plan, and any lessor or lessee of property to or from the Debtor. The rights afforded in the Plan and the treatment of all Claims and Interests therein shall be in exchange for and in complete satisfaction of all Claims and Interests of any nature whatsoever, known or unknown, including, except as expressly provided in the Plan, interest accrued on or expenses incurred in connection with such Claims from and after the Petition Date, against the Debtor or its property or interests in property; and it is further.

ORDERED, pursuant to Bankruptcy Code § 1146, the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, the sale of the Property in accordance with the terms of the Plan, shall not be subject to any stamp, real estate transfer, documentary, registration, sales, added-value, mortgage release, mortgage recording, or similar tax; and it is further

ORDERED, that all entities holding Claims against or Interests in the Debtor that are treated under the Plan are hereby directed to execute, deliver, file, or record any document, and to take any action necessary to implement, consummate, and otherwise effect the Plan in accordance with their respective terms, and all such entities shall be bound by the terms and provisions of all documents executed and delivered by them in connection with the Plan; and it is further

ORDERED, In accordance with Section 1142 of the Bankruptcy Code, the Proponent and any other entity designated pursuant to the Plan, including, without limitation, the Plan

Administrator, are hereby authorized, empowered, and directed to issue, execute, deliver, file, and record any document, and to take any action necessary or appropriate to implement, consummate, and otherwise effectuate the Plan in accordance with its terms, and all such entities shall be bound by the terms and provisions of all documents issued, executed, and delivered by them as necessary or appropriate to implement or effectuate the transactions contemplated by the Plan; and it is further

ORDERED, that the Debtor shall provide the Plan Administrator with (a) access to and assistance in locating any books and records of the Debtor that may reasonably be requested and (b) access to and assistance from the Debtor regarding the Debtor's books and records or factual information relevant to any Causes of Action or objections to Claims that may be brought by the Plan Administrator; and it is further

ORDERED, that the Proponent shall be the disbursing agent under the Plan responsible for making distributions under the Plan, and shall file a disbursement report with the Bankruptcy Court upon making such distributions, and it is further

ORDERED, that the Plan Administrator shall file, within 45 days after the date of this Order, a status report detailing the actions taken by the Debtor and the progress made toward the consummation of the Plan; and it is further

ORDERED, that the Plan Administrator shall file status reports with the Court every January 15th, April 15th, July 15th, and October 15th until a final decree has been entered closing the Debtor's chapter 11 case; and it is further

ORDERED, that the Plan Administrator shall pay to the United States Trustee all fees due and payable by the Debtor, if any, under and pursuant to 28 U.S.C. § 1930, plus all applicable interest thereon, until the Debtor's chapter 11 case is either dismissed, converted to

chapter 7, or until a final decree is entered closing the Debtor's chapter 11 case, whichever is earlier; and it is further

ORDERED, the Proponent and any designee, its respective equity holders, directors, officers, employees, attorneys, financial advisors, investment bankers and other professionals have acted in good faith in connection with the Plan, this Chapter 11 Case, and the formulation and consummation of the Plan, and accordingly, has satisfied Section 1125(e) of the Bankruptcy Code; and it is further

ORDERED, that except as otherwise expressly provided in the Plan, or any other Order of this Court, all persons or entities who have held, hold or may hold Claims against or Interests in the Debtor, along with their respective present and former employees, agents, officers, directors, principals and affiliates, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against the Proponent and/or the Debtor's assets and/or properties with respect to such Claim or Interest (other than actions brought to enforce any rights or obligations under the Plan):

a) commencing or continuing in any manner any action or other proceeding of any kind,

b) enforcing, attaching, collecting or recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree or order,

c) creating, perfecting, or enforcing, in any manner, directly or indirectly, any encumbrance of any kind,

d) asserting any right of setoff, subrogation or recoupment of any kind, or

e) pursuing any Claim released pursuant to the Plan;

and it is further

ORDERED, that except as otherwise provided in the Plan, such injunction shall extend to any successors of the Proponent, the Debtor, and their respective properties and interests in

properties. Additionally, upon the entry of this Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present and former employees, agents, officers, directors, principals and affiliates are hereby enjoined (from taking any actions other than by or in connection with an appeal of this Confirmation Order) to interfere with the implementation or consummation of the Plan. Unless otherwise provided in the Plan, this Confirmation Order, or a separate order of the Court, all injunctions or stays arising under or entered during the Chapter 11 cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the date of this Confirmation Order shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay; provided, however, that on the Effective Date, the stay shall be replaced to the extent provided in this Confirmation Order, with an injunction set forth in the Plan and/or Sections 524 and 1141 of the Bankruptcy Code; and it is further

ORDERED, that this Court hereby retains exclusive jurisdiction over this Order, and to hear and to determine all controversies, suits and disputes, if any, as may arise in connection with the consummation of the Plan; and it is further

ORDERED, that this Order shall not be stayed under Bankruptcy Rule 3020(e).