UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re                                                    Chapter 11

    4921 12th Avenue, LLC                            Case no. 18-47256

    Debtor.
---------------------------------------------------------x

# NOTICE OF HEARING

    PLEASE TAKE NOTICE, a hearing will be held on January 22, 2020 at 3:00 p.m. (the "Hearing") before the Honorable Carla E. Craig at the 271 Cadman Plaza East, Brooklyn, New York to consider the annexed application of Mark Frankel as plan administrator ("Plan Administrator") for the entry of an order under sections 105, 1127 and or 1142 of the Bankruptcy Code authorizing the Plan Administrator of the confirmed plan in the case of 4921 12th Avenue, LLC's to remove the occupants of the commercial space at the Debtor's property at 4921 12th Avenue, Brooklyn, New York ("Property") and to manage the Property pending the sale of the Property under the Plan.

    PLEASE TAKE FURTHER NOTICE, that objections must be in writing, served upon the undersigned, and filed with the Clerk of the Bankruptcy Court, with a courtesy copy to the Honorable Carla E. Craig 's chambers, so as to be received at least seven (7) days before the Hearing date.

Dated: New York, New York
       December 27, 2019

                                        BACKENROTH FRANKEL & KRINSKY, LLP

                        By:    s/ Mark Frankel
                             800 Third Avenue
                             New York, New York 10022
                             (212) 593-1100

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                              Chapter 11

    4921 12th Avenue, LLC                    Case no. 18-47256

    Debtor.
-------------------------------------------------------------x

# MOTION TO TERMINATE THE DEBTOR'S EXCLUSIVE PERIODS

Mark Frankel ("Plan Administrator"), the Plan Administrator of the confirmed plan ("Plan") in the case of 4921 12th Avenue, LLC's (the "Debtor"), as and for his motion for an order under sections 105, 1127 and 1142 of the Bankruptcy Code authorizing and directing: (a) the eviction of the occupants of the commercial space at the Debtor's property at 4917 12th Avenue, Brooklyn, New York 11219 (the "Property"), (b) the United States Marshal for the Eastern District of New York (the "US Marshal") to assist the Plan Administrator with the eviction, and (c) authorizing the Plan Administrator to replace current management of the Property with a professional third party managing agent, respectfully represents as follows:

(a) **During the bankruptcy case, the Debtor represented that there was no lease for the ground floor commercial space, but the space appears to have been occupied throughout by insiders operating a grocery store rent-free,**

(b) **Bidding on the Property has been chilled by the presence of the ground floor occupant, and**

(c) **The Debtor has allowed the insurance on the Property to lapse, has failed to report income and expenses, and has refused the Plan Administrator's request to review books and records.**

1

## BACKGROUND

1. On December 20, 2018, the Debtor filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. "101 <u>et</u> <u>seq</u>. (the "Bankruptcy Code").

2. The Debtor owns the real property at 4917 12th Avenue, Brooklyn, New York 11219 (the "Property") pictured below:



3. The value of the Property, as stated by the Debtor in its Chapter 11 schedules is $10,000,000.

4. Galster Funding LLC (the "Galster Mortgagee") holds a judgment of foreclosure and sale entered on August 20, 2018 in an action entitled *Galster Funding LLC v. 4921 12th Avenue LLC; et al.* in the Supreme Court of the State of New York, County of Kings, Index No.: 500818/2017 (the "Galster Judgment"). The total amount due under the Galster Judgment as of the December 20, 2018 filing date was:

| | |
|---|---:|
| Judgment Amount: | $8,929,916 |
| Interest from 5/31/18 to 08/20/18 @24% per judgment: | 350,973 |
| Interest from 8/21/18 to 12/20/18 @9% per judgment: | 193,931 |
| Costs and Disbursements with interest per judgment: | 1,855 |
| Attorneys' fees per judgment: | 3,500 |
| TOTAL: | $9,480,175 |

5. The only other scheduled creditor is Beis Chasidi Gorlitz (the "BCG Mortgagee"). BCG filed a $13,500,000 mortgage lien claim.

6. Based on the Galster Judgment and the BCG Mortgage claim, secured claims totaled $22,980,175.

7. The Debtor filed nothing in this case to explain the origin of its financial problems or any contemplated bankruptcy solution to those problems. Absent any creditors except the two mortgagees, therefore, it appears that the Debtor filed this Chapter 11 on the eve of the foreclosure sale simply to delay the inevitable sale.

8. The case has a long and unusual backstory.

9. On or about August 30, 2016, the Galster Mortgagee loaned the Debtor $6,500,000, secured by a mortgage on the Property, which Property comprises two condominium units called C1 and R1.

10. At that time, there were two mortgages of record against the Property held by the BCG Mortgagee, one for $1,200,000 and the other for $1,300,000 (the "BCG Mortgages").

11. At the Galster Loan closing, the Debtor presented two (2) satisfactions of mortgages (the "Satisfactions") purportedly evidencing the satisfaction of the BCG Mortgages.

12. Believing that its mortgage would have first priority, the Galster Mortgagee closed and disbursed the loan proceeds.

13. Two months later on November 3, 2016, the BCG Mortgagee commenced a Kings Supreme Court action under index number 519469/2016. BCG produced an affidavit from the notary public on the Satisfactions attesting that the Satisfactions were forged and/or fraudulent. BCG alleged that the amount remaining due on the BCG Mortgages exceeded $5 million as of January 2016. BCG sought a declaration that the Satisfactions were void, that the BCG Mortgages remained valid liens, and that the Galster Mortgage was void. The same day, the Supreme Court enjoined the Debtor and Yehuda Salamon, its principal, from dissipating assets.

14. When the Galster Mortgagee discovered the BCG action, it filed a Supreme Court case to enjoin disbursement of the amounts remaining of its $6,500,000 loan.

15. The Debtor did not oppose either of the injunction applications. Instead, the Debtor essentially admitted that the Satisfactions were bogus and offered to vacate them.

16. The requested injunctions were entered, the Debtor stopped paying the Galster mortgage, the Galster Mortgagee accelerated its loan, and the Galster Mortgagee commenced its foreclosure action.

17. In the BCG case, BCG filed an affirmation alleging a pattern of Debtor misconduct including attempts to defraud BCG, the IRS, the Charities Bureau of the New York State Attorney General's office and the New York State Department of Taxation and Finance.

18. The Debtor then sought to stay the Galster foreclosure arguing that the fraud allegations in the BCG case must be determined first. The ploy failed. The Supreme Court denied the Debtor's motion and appointed Gregory Laspina receiver by order signed on July 11, 2017. Mr. Laspina, however, never took possession.

19. Later, the Supreme Court, by decision and order dated March 7, 2019, extinguished the bogus satisfactions as demanded by BCG.

20. Galster had title insurance. Old Republic, Galster's title insurance carrier, honored its obligation to represent Galster and Butler Fitzgerald was retained for that purpose. Old Republic also acquired the BCG obligation and agreed to subordinate the BCG Mortgages to the Galster mortgage.

21. The Foreclosure Judgment was entered August 20, 2018, and the sale scheduled for December 20, 2018.

22. Meanwhile, the Debtor violated the Supreme Court injunction and disbursed the Galster loan proceeds. Old Republic followed the money. $2,500,000 passed through a number of bank accounts to an entity named RS Old Mill LLC ("Old Mill"), also controlled by Yehuda Salamon. Old Mill used the money to make a down payment on an $18 million purchase of real property owned by Novartis drug company in Rockland County. When it needed more time to close on the Novartis purchase, Old Mill filed a Chapter 11 petition in White Plains. The Debtor was not named as a creditor in the Old Mill case.

23. Without the White Plain Bankruptcy Court's approval, Old Mill then transferred its rights under the Novartis contract to another entity. That entity then flipped the Novartis sale contract to yet another entity. The Novartis property was sold for $30,000,000, ostensibly a $12,000,000 profit for Old mill.

24. Almost a year later, Salamon hired new lawyers for Old Mill who complained to the White Plains Bankruptcy Court that the Debtor's $12,000,000 profit on the Novartis flip had been stolen. When the White Plains Bankruptcy Court discovered that the Debtor assigned the Novartis contract without Bankruptcy Court authority, the Court appointed Salvatore LaMonica as trustee.

25. Since the Plan Administrator may have claims to the $2,500,000 transferred to Old Mill, the Plan Administrator filed a claim in the Old Mill case. The Plan Administrator then entered into a settlement agreement of his potential claims in the Old Mill case with Old Republic and Mr. LaMonica. That Settlement will result in a recovery acceptable

to Galster and Old Republic, the two creditors in this case. Approval is pending in the White Plains bankruptcy court.

26. Meanwhile, since 2005, Yehuda Salamon, the Debtor's beneficial owner, was also beneficial owner of Yidel's grocery store, which occupies the first floor Property and, upon information and belief, Mr. Salamon has also permitted tenants to occupy the upstairs residential units. The mortgages have been unpaid for years, but the Debtor had no money in its account upon filing this case and the limited information available indicates no income since the filing. This raises questions about whether rent has been collected and who has been collecting rent. At the first meeting of creditors the Debtor could not answer a single question about the tenancies, despite repeated attempts by the United State Trustee and Galster's counsel. The Debtor's schedules reflect no leases for the ground floor space.

27. For a number of months, the Debtor filed operating reports for this case. The reports, signed by Yehuda Salamon, show no income and no expenses. The Debtor, however, has filed no operating reports nor provided any record of income or expenses since April 2019.

28. In November 2019, the undersigned was contacted by the Property's insurance broker who stated that the Debtor had not responded to her communications regarding the expiration of insurance coverage on the Property on December 1, 2019. Debtor's counsel was unresponsive. The undersigned, therefore, prevailed on Galster to make a protective advance to continue the insurance.

29. The Plan Administrator retained Rosewood Realty, one of the leading Brooklyn real estate brokers with extensive of knowledge of the Property neighborhood, to sell the Property. Rosewood reports that Mr. Salamon is well known in the community and bidding has been chilled because potential purchasers are unwilling to pay a fair market price since they fear Mr. Salamon will fail to vacate.

## **RELIEF REQUESTED HEREIN**

30. By this Application, the Plan Administrator seeks an order of this Court providing for: (a) the eviction of the occupants of the commercial space at the Debtor's property at 4917 12th Avenue, Brooklyn, New York 11219 (the "Property"), (b) the United States Marshal for the Eastern District of New York (the "US Marshal") to assist the Plan Administrator with the eviction, and (c) the Plan Administrator to replace current management of the Property with a professional third party managing agent

31. The Plan provides for sale of the Property. The sale proceeds will be used (a) to pay pre-petition New York City real estate tax and other liens, if any, (b) administrative claims, if any, (c) Plan administration fees, (d) brokerage fees of 3% of the Purchase Price, (e) priority claims if any, and (f) the remainder to Creditors and Interest Holders in their order of priority.

32. To ensure the Property is sold after reasonable exposure to the marketplace for the highest and best price, the Plan provides for professional marketing for at least 30 days, followed by an auction among qualified bidders. The Plan provides further in the bidding and auction procedures that the sale is free and clear of commercial leases, and in

8

paragraph 84, the Plan provides that the Debtor must turnover possession of the Property at closing.

33. To effectuate the sale, the Confirmation Order provides that the Plan Administrator is authorized to take any action "necessary or appropriate to implement, consummate and otherwise effectuate the Plan."

34. The Plan, in turn, provides at paragraph 90(c) that "The Plan Administrator shall have the exclusive authority and duty to implement the sale of the Property and prosecution of Causes of Action under this Plan and accordingly shall exercise such rights and obligations of the Debtor in accordance with the Plan." Under paragraph 19, "Causes of Action" means "any and all claims and causes of action of, and remedies granted to, the Debtor against any third party, including, without limitation, any avoidance claims or causes of action pursuant to sections 502, 506, 510, 541 through 545, 547 through 551, and/or 553 of the Bankruptcy Code and any claims pursuant to any other statutory or common law."

35. Under the Plan's broad grant of authority, the Plan Administrator has the right to exercise the Debtor's claims and cause of action to evict the ground floor tenant since there is no lease nor record of rent payment. Similarly, the Plan administrator has the right to exercise the Debtor's discretion to replace management with a third-party management company who will collect rent, pay expenses and report operating results.

36. It is clear from the Debtor's post-confirmation actions and inaction that the Debtor does not intend to cause the insider commercial occupants to vacate nor to pay rent,

9

nor does the Debtor intend to intend to provide effective property management services or reporting.

37. The Plan Administrator expects that the assistance of the US Marshal will be necessary given the Debtor's and Mr. Salamon's past misconduct and litigious history.

38. The Plan provides that the Debtor must cooperate with the Plan Administrator in implementing its terms.

39. Section 1142 of the Bankruptcy Code authorizes this Court to enter orders to compel the Debtor to aid in implementation of the Plan.

40. Absent the relief requested herein, the Plan Administrator submits that he cannot effectively market the Property, preserve and protect the Property pending sale, or comply with his obligations under the Plan and the Bankruptcy Code to report the Debtor's income and expenses, and assets and liabilities.

## CONCLUSION

WHEREFORE, the Mortgagee respectfully requests that the Court grant the relief sought herein, that Court grant such other relief as may be just and proper.

Dated: New York, New York
      December 27, 2019

                                  **BACKENROTH FRANKEL & KRINSKY, LLP**
                                  Attorneys for the Mortgagee

                              By:    s/Mark A. Frankel
                                    800 Third Avenue
                                    New York, New York 10022
                                    (212) 593-1100